☐ Original ☐ Duplicate



CLERK'S OFFICE
A TRUE COPY
Jun 05, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No. 24-M-441 (SCD) |
| *or identify the person by name and address)* ) | |
| Information about the location of the cellular telephone ) | **Matter No.: 2024R00192** |
| assigned call number (414) 208-8980 ) | |
| ("TARGET CELL PHONE") ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     6-19-24     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable Stephen C. Dries     .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for   90   days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of   09/03/2024   .

Date and time issued:     6-5-24. 11:20 am                     *Stephen C. Dri* [signature]
                                                                                    *Judge's signature*

City and state:     Milwaukee, Wisconsin           Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **(414) 414-8980** (referred to herein and in Attachment B as "**TARGET CELL PHONE**"), which is subscribed to No Name at 6500 Emerald PY, Apartment 310, Dublin, Ohio (OH) and known to be used by UM, that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey (NJ) 07921.

2.      The **TARGET CELL PHONE**.

## ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the time period January 1, 2024, to the present:

    i. Names (including subscriber names, usernames, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET CELL PHONE** for the time period July 1, 2023, to the present including:

    a.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b.    information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.    Information associated with each communication to and from the **TARGET CELL PHONE** for a period of **30** days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.    Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.    All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.    Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

i.    To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location

Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b), involving UM and other unknown persons prospectively for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

CLERK'S OFFICE
A TRUE COPY
Jun 05, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) )  Case No. 24-M-441 (SCD) |
| Information about the location of the cellular telephone assigned call number (414) 208-8980 ("TARGET CELL PHONE") | ) ) )  **Matter No.: 2024R00192** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 & 843(b) | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, and Unlawful Use of a Communication Facility |

The application is based on these facts:

See attached Affidavit

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* __09/03/2024__*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Jacob Cowan, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

__Telephone__ _____ *(specify reliable electronic means).*

Date: __6-5-24__

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN
# APPLICATION FOR A SEARCH WARRANT

## Matter No.: 2024R001912

I, Jacob Cowan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I have been employed as a Special Agent with the FBI since June 2016. Prior to this, I served as an Officer in the United States Army for twelve years. I have obtained a Bachelor of Science degree in criminal justice from the University of Wisconsin-Milwaukee, a Master's degree in professional studies (M.P.S.) from St. John's University, and a Post Graduate Certificate from the Kennedy School of Government at Harvard University. I graduated from the FBI Academy in Quantico, Virginia, in 2016 and have over seven years of law enforcement experience. I have been involved in the enforcement and investigation of numerous violations of federal law to include drug trafficking investigations, firearm trafficking investigations, and violent crime related cases. I have personally conducted and participated in numerous investigations that have given me familiarity with the various methods that criminals use to conduct illicit firearm and narcotics transactions in violation of federal law. I have used investigative techniques including, but not limited to: consensual monitoring, physical surveillance, witness and subject interviews, court authorized electronic surveillance, review and analysis of telephone records, and the execution of search and arrest warrants. I have received training and have experience in the area of controlled substances investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substances laws to include violations of 21 U.S.C. §§ 841, 843(b), and 846, as well as other violations associated with the trafficking of controlled substance. I have participated in numerous drug investigations utilizing

various means of investigation including, but not limited to, the execution of search warrants, the use of subpoenas, and the use of informants. Additionally, I have training and experience in relation to firearm investigations, and in that training and experience has been directly involved in numerous investigations involving prohibited people possessing firearms, people possessing illegal firearms including machine guns, and people possessing firearms in furtherance of drug trafficking. I have participated in firearm and narcotic investigations at the local, state, and federal levels.

2.     In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of those devices and their locations.

3.     As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21.

4.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 208-8980** (the "**TARGET CELL PHONE**"), which is subscribed to No Name at 6500 Emerald PY, Apartment 310, Dublin, Ohio (OH) and known to be used by an Unidentified Male (UM) and whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey

(NJ) 07921. The **TARGET CELL PHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

5.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

6.      The facts in this affidavit come from case agents' observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my or case agents' knowledge about this matter.

7.      Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

8.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 841(a)(1) (distribution of controlled substances), and 843(b) (use of communication facilities to facilitate narcotics trafficking) have been committed, are being committed, or will be committed by members of the HURTADO Drug Trafficking Organization, and others.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

9.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     The Federal Bureau of Investigation (FBI) is investigating allegations that members of the HURTADO Drug Trafficking Organization, are conspiring with each other, and other individuals yet unknown, to transport and distribute controlled substances, namely cocaine and fentanyl in Racine, Wisconsin.  The investigation has included controlled purchases of narcotics from Armando HURTADO (HURTADO).  The investigation has revealed that an unidentified male (UM) has used the **TARGET CELL PHONE** in furtherance of drug-trafficking activity involving HURTADO.

11.     On May 17, 2024, the Honorable Pamela Pepper signed an Order (App. No. 24-AP-9) authorizing the interception of electronic and wire communications over (262) 301-1034, a telephone number that law enforcement has determined is used primarily by HURTADO. Investigators began the authorized interceptions on May 21, 2024. Law enforcement has intercepted numerous drug-related conversations and surveilled several suspected drug transactions since May 21, 2024.

### Intercepted Phone Call Between HURTADO and Target Cell Phone: May 22, 2024

12.     On May 22, 2024, at 6:34 p.m., HURTADO received an incoming telephone call from the **TARGET CELL PHONE.**  As explained below, the user of the **TARGET CELL PHONE** is believed to be JOSE G. ALVAREZ-GONZALEZ (ALVAREZ-GONZALEZ).  During the intercepted call, ALVAREZ-GONZALEZ said, "Hey, no, well the family has arrived, thank

God." HURTADO said, "Yeah, what's the deal?" ALVAREZ-GONZALEZ said, "No, well they only told me that because … well uh, they're going to have to dismantle the camper and the whole deal there, they told me. They're going to take it to the shop today and he [unknown male] said, 'I believe it'll be ready tomorrow or the day after'." HURTADO said, "Okay, let me …" ALVAREZ-GONZALEZ interrupted, "He said, 'so they can just come and . . . .'" HURTADO said, "Let me tell these guys because [unintelligible] called me a while ago." ALVAREZ-GONZALEZ said, "Yes, yes, only … in other words, but it's-it's all set. They already told me so that . . ." HURTADO said, "Okay."

13.     ALVAREZ-GONZALEZ continued, "'We don't fail them,' he said. I tell him [laughs] I told him, 'No-no-no.'" HURTADO said, "Okay-okay. No, that's fine." ALVAREZ-GONZALEZ said, "I tell him, 'No, I'm ready,' I tell him. He said, 'If it's not Friday morning … early Saturday morning so they can head out to get them.'" HURTADO said, "Okay." ALVAREZ-GONZALEZ said, "He said, 'It's just that at the shop they told us that they couldn't do it right now because they were busy with some other junkers there and to wait for them until tomorrow.' Maybe they will have them ready by noon tomorrow." HURTADO said, "You let me know about when. I'm going to let these guys know right now." ALVAREZ-GONZALEZ said, "Tell them Friday and …and … and for sure Saturday. That is for sure … for sure 100%." HURTADO said, "Hey, alright then." ALVAREZ-GONZALEZ said, "I give you my word. Okay?" HURTADO said, "Alright. Thank you."

14.     Case agents believe through their familiarity with this investigation, and their training and experience, HURTADO and ALVAREZ-GONZALEZ were discussing an incoming shipment of narcotics and were awaiting a vehicle to be dissembled so the narcotics could be extracted from the vehicle. Narcotics traffickers are known to use hidden compartments and trap doors in vehicles

to illegally transport narcotics. Case agents believe HURTADO uses hidden compartments in vehicles to conceal contraband. For instance, during an April 6, 2024 controlled purchase of cocaine from HURTADO, HURTADO retrieved the contraband from a concealed compartment inside his vehicle before consummating the drug deal with an FBI confidential source.

**Intercepted Phone Call Between HURTADO and Target Cell Phone: May 25, 2024**

15.     On May 25, 2024, at 6:04 p.m. HURTADO placed an outgoing call to the **TARGET CELL PHONE**. During the intercepted call, HURTADO said, "What's up? How are we going to do it?" ALVAREZ-GONZALEZ said, "What was I going to tell you? Umm … you know what … I already told him right now that in the afternoon, dude …because they were waiting on me right now right? I already told him, no dude … I told him, it's just that my cousin is working and all that. I told him that he gets out in the afternoon. Well, I just gave them that lip service. You understand me?" HURTADO responded, "Uh-huh." ALVAREZ-GONZALEZ said, "I told him, besides well … umm, we were waiting on you. You told me one day and then he was also ready … Well, I gave them a speech and then he tells me, 'No-no dude, what's going on is that like these guys get, umm … the *broker* and the fucking whatchamacallit … the dispatch wasn't giving them a load,' he says." HURTADO said, "Okay-okay." ALVAREZ-GONZALEZ said, "That's why it gets delayed ... he says they got delayed a little bit … and the checking here and there. He says, 'no-no,' but nothing out of this world. So, then they will be waiting for us tomorrow. I told him a while ago." HURTADO asked, "What time? So that I can ... so that I can be ready with the ... with the money [unintelligible]. I'm going to pick it up. You understand me?" ALVAREZ-GONZALEZ said, "Yes, just bring for one."

16.     HURTADO responded, "Yes, that's why I'm telling you … What time more or less?" ALVAREZ-GONZALEZ said, "I think that I would pick you up around 10:00 a.m. more or less,

and we would leave from there. Or ... I don't know ... I don't know if you have any car with a bookbag/satchel or something?" Case agents believe through their familiarity with this investigation, and their training and experience, ALVAREZ-GONZALEZ was inquiring if HURTADO had a vehicle with a hidden compartment. HURTADO said, "No, I don't have it but it would be over there by you, right?" ALVAREZ-GONZALEZ said, "No, it's umm … we have to go to the Windy City." HURTADO said, "Oh, head down…" ALVAREZ-GONZALEZ said, "Yes, so yes we have to head down." HURTADO said, "Okay."

17.    Case agents believe through their familiarity with this investigation, and their training and experience, that the type and quantity of contraband that HURTADO and ALVAREZ-GONZALEZ discussed retrieving in Chicago, Illinois (i.e., the "Windy City") was a kilogram of cocaine. Case agents believe HURTADO and ALVAREZ-GONZALEZ were discussing cocaine because HURTADO distributed cocaine during three recent controlled purchases (i.e., on February 28, 2024; March 15, 2024; and April 6, 2024). Additionally, when ALVAREZ-GONZALEZ told HURTADO to "just bring [money] for one," case agents believe they were discussing a kilogram quantity of cocaine because that would have been consistent with the amount HURTADO likely needed given the quantities he has historically been known to distribute (i.e., 264.2 grams on February 28, 2024; 236.4 on March 15, 2024; and 159.7 grams on April 6, 2024).

18.    ALVAREZ-GONZALEZ continued, "Anyway they're saying that … like the man is trustworthy, so, well, we will go to his house." HURTADO said, "Oh then that's fine." ALVAREZ-GONZALEZ said, "Yes, well it won't be done stupidly. He says, 'No, it's fine. Don't worry.' I told him, 'Alright then it's cool.'" HURTADO said, "Okay, [unintelligible]." ALVAREZ-GONZALEZ said, "But no, everything … everything is in order, dude. Thank God." HURTADO said, "I'm going to ... I'm going to [unintelligible] this dude to get ... to get that shit to have it ready."

ALVAREZ-GONZALEZ said, "Yes and I'm telling you, I will swing by tomorrow to pick you up and then, if you want, we can go in your truck or whatever." HURTADO said, "All right then, I'll call you right now. Let me talk with this dude ASAP." ALVAREZ-GONZALEZ replied, "All right then. You got it [unintelligible] let me know if anything comes up. But we're ready already, dude. He told me … he told me that it would be one time. He said, from here on, we're going to really be constant. It will be just this time ... it will be the only time that they are going to come.  He said the rest of the times they will arrive over there to your homes." Case agents believe through their familiarity with this investigation, and their training and experience, that ALVAREZ-GONZALEZ was telling HURTADO that this would be the only time they would need to travel to Chicago, Illinois to pick up suspected contraband because, moving forward, everything would be delivered to their homes. HURTADO responded, "Okay, that's fine."

### Intercepted Phone Calls Between HURTADO and Target Cell Phone: May 30, 2024

19.     On May 30, 2024, at 11:51 a.m., HURTADO called the **TARGET CELL PHONE**. During the intercepted call, HURTADO said he did not want to ask for a loan, he had "10 bucks," and that he would give ALVAREZ-GONZALEZ the rest right away.  ALVAREZ-GONZALEZ told HURTADO to see him.  HURTADO told ALVAREZ-GONZALEZ that he first had to cut some lawns but would stop by when he was done.  ALVAREZ-GONZALEZ responded that he could leave work anytime, that he was currently working on the "north side," but stayed on the "south side."  Case agents believe through their familiarity with this investigation, and their training and experience, that HURTADO indicated he had insufficient funds (i.e., he only had $10,000) to purchase a kilogram of cocaine, and that he would pay ALVAREZ-GONZALEZ the balance owed as soon as possible.

20.     At 3:28 p.m., HURTADO called the **TARGET CELL PHONE**.   During the intercepted call, HURTADO said he would meet ALVAREZ-GONZALEZ at his home.   When ALVAREZ-GONZALEZ indicated that he was not at his home, HURTADO asked ALVAREZ-GONZALEZ to call him when ALVAREZ-GONZALEZ was free.   ALVAREZ-GONZALEZ said he had the "Tickets for the dance."   ALVAREZ-GONZALEZ and HURTADO then agreed to meet between 6:00 p.m. and 6:30 p.m.   At 6:52 p.m., HURTADO received a call from the **TARGET CELL PHONE**.   During the intercepted call, HURTADO and ALVAREZ-GONZALEZ agreed to meet at the Pick 'n Save near a Menards on Miller Parkway.   At 7:29 p.m., HURTADO called the **TARGET CELL PHONE**.   During the intercepted call, ALVAREZ-GONZALEZ told HURTADO to meet him at the "Pita Palace" on West Layton Avenue in Milwaukee, Wisconsin.   HURTADO agreed to meet at this location.   At 7:47 p.m., HURTADO called the **TARGET CELL PHONE**.   During the intercepted call, ALVAREZ-GONZALEZ said he was by the "Pita Palace" and directed HURTADO into the parking lot.

21.     Case agents conducted physical and electronic surveillance on HURTADO before, during, and after his meeting with ALVAREZ-GONZALEZ.   Case agents followed HURTADO, who was driving a white GMC Sierra Denali pickup truck from 2626 Maple Grove Avenue, Racine, Wisconsin to the Pita Palace, which is located at 789 Layton Avenue, Milwaukee, Wisconsin.   Case agents observed HURTADO park his vehicle in an open parking lot, next to a white Chevrolet van. While conducting surveillance, case agents observed HURTADO meet with the driver of the van. Case agents determined that the white Chevrolet van was registered to JA Painting LLC, which is owned by Jose G. ALVAREZ-GONZALEZ.   Law enforcement followed the white Chevrolet van after it departed from meeting with HURTADO and observed the driver, who was wearing a red T-shirt. When shown the Wisconsin driver's license photograph of ALVAREZ-GONZALEZ, case

agents, who were conducting physical surveillance of the meeting, identified ALVAREZ-GONZALEZ as the person who was driving the white Chevrolet van. Based on this identification, case agents concluded ALVAREZ-GONZALEZ was the likely user of the **TARGET CELL PHONE**, which had been in communication with HURTADO.

22.     After the meeting between HURTADO and ALVAREZ-GONZALEZ, case agents followed HURTADO back to Racine, Wisconsin. While HURTADO was returning to Racine, Wisconsin, he called CHS#1[1] and said, "I'm good, meet at my mom's." Based on previous controlled drug buys, case agents knew HURTADO was directing CHS#1 to meet at 806 Prospect Street, Racine. At approximately 8:17 p.m., CHS#1 notified case agents that HURTADO wanted to meet to conduct a drug transaction. At approximately 9:19 p.m., law enforcement met with CHS#1 and equipped CHS#1 with audio and video recording equipment. At approximately 9:20 p.m., CHS#1 received a Facetime call from HURTADO. During the call, CHS#1 said, "I'm getting ready to pull up my boy." HURTADO responded, "Where you at my boy?" CHS#1 said, "I'm getting ready to pull up. I'll be like a couple seconds." HURTADO said, "Say no more." At approximately 9:24 p.m., CHS#1 arrived at 806 Prospect Street, Racine, Wisconsin, exited his/her vehicle, and entered the front passenger side of HURTADO's white GMC truck. CHS#1 provided HURTADO $3,500 in buy money. In exchange, HURTADO provided CHS#1 with approximately 146 grams of suspected cocaine. Given the totality of the circumstances, case agents believe HURTADO supplied CHS#1 with the cocaine that HURTADO had apparently just obtained from ALVAREZ-GONZALEZ.

---

[1] CHS#1 has been reporting to the FBI since approximately February 2024. CHS#1 has not received any monetary compensation for his/her cooperation with the FBI. CHS#1 is cooperating in exchange for consideration on pending state criminal cases. CHS#1 is considered reliable and credible, and certain information provided by CHS#1 has been corroborated from external sources, including consensually recorded audio and visual recordings, multiple controlled narcotics purchases, and law enforcement databases. CHS#1 is a convicted felon and has a criminal history that includes possession with intent to distribute cocaine, recklessly endangering safety, vehicle operator flee/elude, and resisting or obstructing a police officer.

## CONCLUSION

23.     The **TARGET CELL PHONE** is being operated by ALVAREZ-GONZALEZ**.** The location data associated with the **TARGET CELL PHONE** will assist law enforcement in conducting targeted physical surveillance locate ALVAREZ-GONZALEZ.

24.     Case agents searched law enforcement databases to confirm that the **TARGET CELL PHONE** is currently being serviced by Verizon Wireless.

25.     Case agents are requesting this warrant authorizing the collection of data related to the **TARGET CELL PHONE** for **30** days to enable case agents to monitor the **TARGET CELL PHONE'S** location, which will assist case agents in identifying the residence of ALVAREZ-GONZALEZ**,** and other locations associated with ALVAREZ-GONZALEZ's drug-trafficking activity. Furthermore, the **TARGET CELL PHONE'S** location data will assist Case agents in locating ALVAREZ-GONZALEZ should Case agents decide to arrest ALVAREZ-GONZALEZ for violations of the federal controlled-substances laws.

26.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

27.     Based on my training and experience, I know that Verizon Wireless can also collect timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

## Cell-Site Data

28.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **TARGET CELL PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers, such as the Service Provider, typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29.     Based on my training and experience, I know that Verizon Wireless also can collect per-call measurement data, which Verizon Wireless also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## E-911 Phase II / GPS Location Data

30.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-

longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **TARGET CELL PHONE**, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available.

<u>**Subscriber Information**</u>

31.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

investigation because the information can be used to identify the **TARGET CELL PHONE'S** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

33.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

34.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

35.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **60 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELL PHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to change patterns of behavior and flee from prosecution. *See* 18 U.S.C.

§ 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

36.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **(414) 414-8980** (referred to herein and in Attachment B as "**TARGET CELL PHONE**"), which is subscribed to No Name at 6500 Emerald PY, Apartment 310, Dublin, Ohio (OH) and known to be used by UM, that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey (NJ) 07921.

2.      The **TARGET CELL PHONE**.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.    The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the time period January 1, 2024, to the present:

    i.    Names (including subscriber names, usernames, and screen names);

    ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.    Local and long-distance telephone connection records;

    iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.    Length of service (including start date) and types of service utilized;

    vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.　Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.　All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET CELL PHONE** for the time period July 1, 2023, to the present including:

   a.　the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   b.　information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.　Information associated with each communication to and from the **TARGET CELL PHONE** for a period of **30** days from the date of this warrant, including:

   i.　Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii.　Source and destination telephone numbers;

   iii.　Date, time, and duration of communication; and

   iv.　All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.　Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

   i.　To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location

Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b), involving UM and other unknown persons prospectively for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.